Below is an Opinion of the Court.

1

2

3

4

5

6
_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

7

8

9
UNITED STATES BANKRUPTCY COURT

10
FOR THE DISTRICT OF OREGON

11
In Re:                          )   Bankruptcy Case
                                )   No. 13-30439-tmb7
12
PACIFIC CARGO SERVICES, LLC,     )
                                )   MEMORANDUM OPINION
13
                    Debtor.       )

14
On August 30, 2013, I held a final evidentiary hearing

15
("Hearing") on General Electric Capital Corporation's ("GE Capital")

16
motion to vacate ("Motion to Vacate") the Order (I) Authorizing and

17
Approving Asset Purchase Agreement by and between Hilco Industrial, LLC

18
or its Designee and Debtor; (II) Authorizing and Approving Sale of

19
Certain Assets of Debtor Free and Clear of Liens; and (III) Granting

20
Certain Related Relief (the "Hilco Sale Order"), entered on July 31, 2013

21
in the above-captioned case.  Following the presentation of evidence,

22
including live testimony, and hearing argument from counsel, I took the

23
matter under advisement.

24
Since the Hearing, I have reviewed the pleadings and legal

25
memoranda filed by GE Capital and Hilco Industrial, LLC ("Hilco"), the

26
admitted exhibits and my notes from the Hearing.  I have considered

Page 1 - MEMORANDUM OPINION

carefully the testimony and arguments presented.  I further have taken
judicial notice of the relevant entries in the docket and documents filed
in the bankruptcy case of Pacific Cargo Services, LLC ("Pacific Cargo"),
Case No. 13-30439, for purposes of confirming and ascertaining facts not
reasonably in dispute.  Federal Rule of Evidence 201; <u>In re Butts</u>, 350
B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006).  In addition, I have reviewed
relevant legal authorities, both as cited to me by the parties and as
located through my own research.

In light of that consideration and review, this Memorandum
Opinion sets forth the court's findings of fact and conclusions of law
under Civil Rule 52(a), applicable in this contested matter under Rules
7052 and 9014[1].

## I. FACTUAL BACKGROUND

Pacific Cargo filed its petition for protection under chapter
11 on January 28, 2013.  Docket No. 1.  Pacific Cargo was an expedited
freight company, focusing on overnight deliveries.  It operated in five
states with approximately 248 employees.  From the outset, Pacific
Cargo's prospects for reorganization in chapter 11 apparently were
questionable.  Pacific Cargo was kept on a very short leash concerning
use of secured creditor cash collateral.  A total of nine interim orders
authorizing limited cash collateral use for "necessities, but no

---

[1] Unless otherwise indicated, all chapter and section references are
to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references
are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The
Federal Rules of Civil Procedure are referred to as "Civil Rules."  The
Local Rules of the District Court for the District of Oregon are referred
to as "LR's" and the Local Rules for the Bankruptcy Court for the
District of Oregon are referred to as "LBR's."

Page 2 - MEMORANDUM OPINION

niceties" were entered, with the last such order being entered on June 3, 2013, extending cash collateral use through July 23, 2013. <u>See</u> Docket No. 305.

Ultimately, the decision was made to focus on a going concern sale of Pacific Cargo's business in order to maximize value for creditors and maintain employment opportunities for Pacific Cargo's employees. To that end, Pacific Cargo applied to the court to approve the retention of Equity Partners CRB LLC ("Equity Partners") as the broker for the sale of Pacific Cargo's business and some or all of its assets. <u>See</u> Docket No. 261. Equity Partners was selected for that task after a substantial investigation and interview process by Pacific Cargo, its primary secured creditor, Graystone Capital ("Graystone"), and the creditors' committee ("Committee"). Equity Partners' employment was conditionally approved, with a further period to object, by order entered on June 3, 2013. <u>See</u> Docket No. 298. Equity Partners specifically was engaged to:

> (a) inspect the Debtor's assets (the "Assets") to determine their physical condition; (b) prepare a program to market the Assets; (c) prepare the advertising letters, fliers and/or similar sales materials, which would include information regarding the Assets; (d) endeavor to locate parties who may have an interest in becoming a joint venture partner, investing in, acquiring, or refinancing the Debtor's business or the Assets; (e) circulate materials to interested parties regarding the Assets, after completing confidentiality documents; (f) communicate and negotiate with and obtain offers from interested parties and make recommendations to Debtor as to whether or not a particular offer should be accepted; (g) communicate regularly with Debtor in connection with the status of Equity Partners' efforts with respect to the disposition of the Assets, including a weekly written report to all Parties-in-Interest; (h) if requested by Debtor, negotiate with various stakeholders of the Debtor, including but not limited to, secured and unsecured creditors and equity

Page 3 - MEMORANDUM OPINION

> shareholders, in regards to the possible financial
> restructuring of the existing claims of the creditors
> and/or equity stakeholders of the Debtor; (i)
> recommend to Debtor the proper method of handling any
> specific problems encountered with respect to the
> marketing or disposition of the Assets; and (j)
> perform related services necessary to maximize the
> proceeds to be realized for the Assets.

See Docket No. 298, at p.1.  After an objection was filed, Equity Partners' engagement was finally approved, following a hearing, by an amended order entered on June 25, 2013.  See Docket Nos. 331 and 335.

Although Equity Partners engaged in a substantial marketing effort, including setting up a data room for review of documents and information relating to Pacific Cargo, placing an advertisement in the Wall Street Journal, directing targeted outreach, including mailings, to potential buyers, and fielding expressions of interest from dozens of potential buyers (see Docket No. 327, at p.3), the proposed vehicle for moving Pacific Cargo's assets to a sale was a "stalking horse" bid to be followed up by an auction.  Pacific Cargo filed a motion ("Auction Motion") to authorize and schedule the auction and authorize and approve bidding procedures on June 13, 2013.  See Docket No. 320.  The United States Trustee ("UST") objected to the Auction Motion on a number of grounds.  See Docket No. 326.  After a contested hearing, the Auction Motion was granted with modifications required by the bankruptcy court. See Docket No. 331.  An order ("Auction Order") approving the Auction Motion was entered on June 25, 2013.  See Docket No. 338.  The Auction Order was served on GE Capital by mail and electronically on its local counsel and counsel of record and to the post office address specified on GE Capital's proof of claim ("Proof of Claim").  See Exhibit R.  In the

Page 4 - MEMORANDUM OPINION

Proof of Claim, GE Capital asserted a secured claim in the amount of $1,005,289.78. <u>See</u> Exhibit 4. The Auction Order was not appealed and is final.

The "stalking horse" bid that was used to get the auction process moving was a "low ball" offer that was not expected to end up as the winning bid. Complicating the auction sale effort was the fact that Pacific Cargo had a number of secured creditors who potentially could end up credit bidding for their particular items or groupings of collateral. Consequently, the auction was structured so that bidders not only could bid on all of Pacific Cargo's assets to acquire the entire business, but also could bid on various "lots" of assets, encompassing the collateral of the various secured creditors, of which GE Capital was one.

The Notice of Intent ("Notice of Intent") to auction Pacific Cargo's assets, advising of the auction date and time as July 23, 2013 at 9:00 am, and further advising that a hearing to approve auction sale results and to consider any objections would be held on July 23, 2013 at 1:30 pm, was served by mail and electronically on July 10, 2013. <u>See</u> Docket No. 357. The Notice of Intent was served by mail on GE Capital 1) to the attention of its registered agent, CT Corporation System, at 388 State Street, Ste. 420, Salem, OR 97301; 2) to POB 3083, Cedar Rapids, IA 52406-3083, the address set forth on GE Capital's Proof of Claim; and 3) to its local counsel and counsel of record, Wilson C. Muhlheim, Luvaas Cobb, 777 High Street #300, Eugene, OR 97401-2750, electronically as well as by mail. <u>See</u> Exhibits 4 and K. GE Capital contests receiving some or all of said communications/mailings.

Pacific Cargo filed a motion to sell its assets free and clear

of liens, claims and encumbrances outside of the ordinary course of business ("Sale Motion") on July 11, 2013. <u>See</u> Docket No. 358. The certificate of service for the Sale Motion reflects that it was served on July 11, 2013, on GE Capital's registered agent, CT Corporation System, and on its local counsel and counsel of record, both electronically and by mail. <u>See</u> Docket No. 358, Certificate of Service. Again, GE Capital contests receiving service of the Sale Motion.

The auction proceeded as scheduled on July 23, 2013, overseen by Equity Partners' personnel. However, it did not conclude fully that day. During a hearing late in the afternoon on July 23rd, counsel for Pacific Cargo reported that three vehicle lots had been sold based on the credit bids of their three respective secured creditors: PACCAR Financial Corp. ("Paccar") for $450,002; Ford Motor Credit Corp. ("FMCC") for $211,000; and Ally Financial, Inc. ("Ally") for $119,000. <u>See</u> Docket Nos. 393 and 394. The auction sales concluded the following day, July 24, 2013. At a hearing late in the afternoon on July 24th, counsel for Pacific Cargo reported that Postal Express, Inc. ("Postal Express") was the successful bidder for Lots 1 and 4, encompassing office furniture, and some machinery and equipment, as well as customer lists, intellectual property, etc., for $125,000. Hilco was the high bidder to purchase Lot 2, encompassing the eleven delivery trucks in which GE Capital had a security interest ("GE Trucks"), for $180,000; and Graystone purchased remaining accounts receivable by means of a credit bid. Pacific Cargo requested § 363(m)[2] "good faith" purchaser

_____

[2] Section 363(m) provides as follows: "The reversal or modification
(continued...)

determinations as to the various buyers at the auction, but no evidence to support "good faith" purchaser findings was presented at the hearings on either July 23rd or 24th.  See Docket No. 402.  GE Capital did not appear and did not participate in the auction.

An order approving the sale of the Lots 1 and 4 assets to Postal Express was entered on July 25, 2013.  See Docket No. 405.  Graystone waived its security interest in the assets sold to Postal Express so that all net proceeds from the Postal Express sale were to be paid to Pacific Cargo's bankruptcy estate.  See Docket No. 405, at pp.6-7.

On July 30, 2013, the UST filed an expedited motion to convert or dismiss Pacific Cargo's chapter 11 case.  See Docket Nos. 424 and 425.

On July 31, 2013, orders were entered approving the sales to Paccar, FMCC and Ally.  See Docket Nos. 429, 430 and 431.  An order approving the sale to Hilco ("Hilco Sale Order") was entered on the same day.  See Docket No. 432.  The Hilco Sale Order included the following findings:

> I.  The Debtor may sell the Assets free and clear of all liens, claims, encumbrances and interests because each entity with a security interest in the Assets to be transferred on the Closing Date either (a) has consented to the Sale; (b) could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest; or (c) otherwise falls

---

[2](...continued)
on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

> within the provisions of 363(f) of the Bankruptcy
> Code, and therefore, in each case, one or more of the
> standards set forth in section 363(f)(1)-(5) of the
> Bankruptcy Code has been satisfied.  Those holders of
> liens, claims encumbrances and interests who have been
> properly noticed and who did not object to the Sale
> Motion are deemed to have consented pursuant to
> section 363(f)(2) of the Bankruptcy Code.

See Docket No. 432, at p.3.  The Sale Order reflects that Hilco purchased the GE Trucks for $180,000 and that Pacific Cargo's bankruptcy estate would receive ten percent ($18,000) of the sale proceeds.  Id. at pp.2-4.

Pacific Cargo filed its own motion to convert its chapter 11 case to chapter 7 on August 1, 2013, supporting the UST's motion to convert, because Pacific Cargo's assets had been sold, and it no longer was operating.  See Docket No. 441.

An order authorizing Pacific Cargo's sale of accounts receivable to Graystone was entered on August 2, 2013.  See Docket No. 451.

Following an expedited hearing, and based on the motions of the UST and Pacific Cargo, the bankruptcy court entered an order converting Pacific Cargo's chapter 11 case to chapter 7 on August 2, 2013.  See Docket No. 455.

On August 8, 2013, GE Capital filed the Motion to Vacate, alleging that it first heard about the sale of the GE Trucks to Hilco when Hilco's representatives contacted GE Capital to obtain titles to the trucks.  See Docket No. 465, particularly at p.3.  GE Capital argued that the Hilco Sale Order should be vacated because 1) GE Capital did not receive proper notice of the sale; and 2) the GE Trucks were sold for far below fair market value, resulting in a windfall to Hilco.  Id. at 4-5.

Page 8 - MEMORANDUM OPINION

Hilco responded, arguing that GE Capital in fact received appropriate notice of the sale, and the sale was the result of a competitive auction at which Hilco participated in good faith.  See Docket No. 479.  The Hearing and further briefing were scheduled at a preliminary hearing held on August 16, 2013.  See Docket No. 483.

## II.  JURISDICTION

I have jurisdiction to decide the Motion to Vacate under 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(A) and (N).

## III.  DISCUSSION

1.  <u>Standards for Deciding a Motion to Vacate</u>.

In the Motion to Vacate, GE Capital cites both Civil Rules 59 and 60, applicable in bankruptcy proceedings under Rules 9023 and 9024, respectively, as authority for vacating the Hilco Sale Order.

Under Civil Rule 59(a)(2), a bankruptcy court can revisit a decision "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."  The Ninth Circuit has held that "[t]here are three grounds for granting new trials in court-tried actions under [Civil] Rule 59(a)(2): (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence."  <u>Brown v. Wright</u>, 588 F.2d 708, 710 (9th Cir. 1978).  I have broad discretion in determining whether to grant a motion to vacate a decision, and such motions "should not be granted in the absence of highly unusual circumstances."  <u>Orange St. Partners v. Arnold</u>, 179 F.3d 656, 665 (9th Cir. 1999).

Civil Rule 60(b) sets forth additional grounds for granting relief from a final judgment or order.  The grounds alleged by GE Capital

Page 9 – MEMORANDUM OPINION

in the Motion to Vacate are under Civil Rule 60(b)(1), "mistake, inadvertence, surprise, or excusable neglect," and 60(b)(4), "the judgment [or order] is void." In bankruptcy cases, Civil Rule 60(b) has generally been held to constitute an extraordinary remedy, and the Supreme Court has stated that Civil Rule 60(b)(4), in particular, "applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1377 (2010).

Whether I consider the Motion to Vacate under Civil Rule 59 or 60, GE Capital bears the burden of proof to establish that it is entitled to the relief it requests. See, e.g., Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000); In re Worldcom, Inc., 382 B.R. 610, 620 (Bankr. S.D.N.Y. 2008); Cassidy v. Tenorio, 856 F.2d 1412, 1415 (9th Cir. 1988).

In light of these standards, I consider the parties' arguments in support of and opposing the relief requested in the Motion to Vacate.

2. Adequate Notice

The Rules have a lot to say about notices of bankruptcy sales. Rule 2002(a)(2) provides that creditors shall be given at least 21 days' notice by mail of "a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice." Rule 2002(g)(1)(A) provides that notices required to be mailed to a creditor under Rule 2002 shall be addressed to such creditor at the mailing address specified in the creditor's filed proof of claim.

Page 10 - MEMORANDUM OPINION

Rule 6004(a), as applicable, consistently requires that "[n]otice of a proposed use, sale, or lease of property, . . . not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2) . . . ." However, Rule 6004(c) further provides that, "A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession or trustee." In turn, Rule 9014(b) requires that a motion in a contested matter, such as a Rule 6004(c) motion to sell property free and clear of liens, "shall be served in the manner provided for service of a summons and complaint by Rule 7004." Rule 7004(b) provides that service within the United States may be made by first class mail, postage prepaid. Specifically applicable in this case is Rule 7004(b)(3), which requires that such service on a United States corporation be made by mailing a copy of the motion "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." In other words, a motion for authority to sell property of the bankruptcy estate outside of the ordinary course of business, free and clear of liens, must be served by first class mail on an authorized representative of the lien holder who will have some understanding as to what the piece of paper they have received in the mail actually means.

GE Capital asserts three arguments in support of its position

that Pacific Cargo's notice of the sale of GE Capital's collateral was
inadequate: 1) the Sale Motion was not served at the address specified in
GE Capital's Proof of Claim; 2) the Notice of Intent noticed a hearing on
less than the twenty-one days mandated in Rule 2002; and 3) notice of the
sale of GE Capital's collateral should have been sent to GE Capital's
lead counsel, Reed Smith, LLP.  I consider each of these arguments in
turn.

A.  <u>Appropriate Service</u>

     At the Hearing, Pacific Cargo's counsel, Margot Lutzenhiser,
testified, without contradiction, that following the filing of GE
Capital's Proof of Claim, Pacific Cargo's mailing matrix was amended to
incorporate GE Capital's mailing address specified in the Proof of Claim.
Both Ms. Lutzenhiser and David Cakarnis, the managing partner of DTI, aka
Bridge City Legal, the entity hired to handle the matrix mailing of the
Notice of Intent, testified credibly as to their supervision of the
mailing of the Notice of Intent so that the notice was properly addressed
and mailed by first class mail, postage prepaid, to all interested
parties listed on Pacific Cargo's mailing matrix and to all parties
entitled to Rule 7004 notice.  In fact, the amended certificate of
service for the Notice of Intent reflects such service on July 11, 2013
and further reflects service on GE Capital at its Proof of Claim address,
on its registered agent and on its counsel of record.  <u>See</u> Exhibit K.
Copies of the Sale Motion were properly addressed and mailed to GE
Capital's registered agent, as required by Rules 6004(c), 9014(b) and
7004(b)(3), and to GE Capital's counsel of record.  <u>See</u> Docket No. 358.
The Auction Order was properly addressed and mailed to GE Capital at the

Page 12 - MEMORANDUM OPINION

address specified on its Proof of Claim and to its counsel of record on June 26, 2013. See Exhibit R.

In the Ninth Circuit, "[t]he mailing of a properly addressed and stamped [notice] creates a rebuttable presumption that the addressee received it." Morris v. Peralta (In re Peralta), 317 B.R. 381, 386 (9th Cir. BAP 2004), citing Moody v. Bucknum (In re Bucknum), 951 F.2d 204, 207 (9th Cir. 1991). "A certificate of mailing raises the presumption that the documents sent were properly mailed and received." In re Peralta, 317 B.R. at 386 (citations omitted). Rebuttal of the presumption requires clear and convincing evidence. In re Bucknum, 951 F.2d at 207.

The evidence as to receipt/nonreceipt by GE Capital of notice of the sale of its collateral by Pacific Cargo is mixed. Elizabeth Steel, a litigation specialist at GE Capital dealing with bankruptcy, testified that she was assigned the Pacific Cargo matter. She testified that she did not receive any of the notices relating to Pacific Cargo's sale of GE Capital's collateral. She further testified that she received a notice of sale of Pacific Cargo assets in which GE Capital did not have a security interest, but otherwise, her first notice of the sale to Hilco was when she was contacted by a Hilco representative to obtain vehicle titles. However, she further testified that mailed bankruptcy notices first were received by a coordinator and only then, sorted for delivery to assigned bankruptcy specialists. See Exhibit O, at p.5. GE Capital's counsel held up a sheaf of notices received at GE Capital with respect to the Pacific Cargo bankruptcy, but the particular notices that were received were not identified. Accordingly, the evidence reflects that GE

Page 13 - MEMORANDUM OPINION

Capital received at least some of the documents sent to
creditors/interested parties in the Pacific Cargo case.  Ms. Steel
credibly testified that she did not receive any notices relating to the
sale of GE Capital's collateral, but exactly what notices GE Capital in
fact received is not clear.

The record is clearer with respect to notices received by GE
Capital's registered agent, CT Corporation System.  In response to
Hilco's First Request for Production of Documents, GE Capital produced a
written statement from CT Corporation System reflecting receipt of
"Notice, Asset Purchase Agreement, Exhibits, Motion" in Pacific Cargo's
bankruptcy case on July 12, 2013, noting "Response Due" on July 23, 2013.
See Exhibit P, at p.8.  In its response to Hilco's Request for Admission
No. 7, GE Capital admits that CT Corporation received copies of the Sale
Motion and the Notice of Intent prior to the sale of Pacific Cargo's
assets.  See Exhibit O, at p.6.  However, there is no information given
as to what information was passed on to GE Capital by CT Corporation
System regarding the Pacific Cargo asset sale, and if information was
passed on, why GE Capital did not receive it or recognize its
significance.

Finally, the certificates of service reflect that the Notice of
Intent, the Sale Motion and the Auction order were served electronically
and by first-class mail on GE Capital's counsel of record and local
counsel, Wilson Muhlheim at the Luvaas Cobb law firm.  LBR 9010-1(b)(1)
provides in relevant part:

> Attorney of Record.  An "attorney of record" is the
> attorney upon whom service is to be made, and to whom
> notices will be directed by the court.  A party's

Page 14 - MEMORANDUM OPINION

attorney of record will normally be the first attorney
admitted to practice before both the [Oregon State
Bar] and the district court that is named on the
initial document filed by the party.

In its response to Hilco's Request for Admission No. 3, GE
Capital admits that Luvaas Cobb was the attorney of record for GE Capital
in Pacific Cargo's bankruptcy case. <u>See</u> Exhibit O, at p.5  Mr. Muhlheim
signed a motion for relief from stay ("RFS Motion") filed by GE Capital
in the Pacific Cargo case as local counsel, and his name and his firm's
name appeared first on the first page of the pleading, along with
Nicole K. O'Sullivan of Reed Smith LLP ("Reed Smith"), as counsel for GE
Capital. <u>See</u> Exhibit 5.  At the preliminary hearing on the RFS Motion,
Mr. Muhlheim appeared for GE Capital along with Aaron Chapin of Reed
Smith to report that the parties had a tentative agreement that needed to
be documented by an agreed order. <u>See</u> Exhibit 6.  The order on the RFS
Motion that subsequently was entered was signed in behalf of GE Capital
only by Mr. Muhlheim. <u>See</u> Exhibit 7, at p.2.

GE Capital admitted in its response to Hilco's Request for
Admission No. 5 that Luvaas Cobb received ECF notice of both the Notice
of Intent and the Sale Motion. <u>See</u> Exhibit O, at p.5.  Mr. Muhlheim
testified at his deposition that he received the Notice of Intent and the
Sale Motion through the ECF system, although he had no record of
receiving them through the mail. <u>See</u> Exhibit A, at pp.17, 21 and 25.
Mr. Muhlheim described the scope of his representation of GE Capital in
the Pacific Cargo case as follows:

[M]y job was to advise [Reed Smith] on local rules and
procedures, to appear in court as necessary, and
appear in the motion for relief from stay, and do

Page 15 - MEMORANDUM OPINION

nothing further unless instructed to do so.  That I
was not to be following the BNC [electronic] notices.

Exhibit A, at p.32.  Mr. Muhlheim had no direct contact with GE Capital.
See Exhibit A, at pp.8 and 33.

Mr. Muhlheim is a very experienced, competent bankruptcy
attorney.  If he had been authorized to review the electronic notices
being sent in the Pacific Cargo case, he would have understood
immediately the significance of the Notice of Intent and the Sale Motion
and would have communicated the urgency of considering and responding to
them to Reed Smith.  He was not so authorized.

I can only assume that GE Capital limits the services to be
performed by its local counsel, such as Mr. Muhlheim, in bankruptcy cases
as an economy measure, and proceeding in that fashion undoubtedly saves
GE Capital money in many cases.  However, every once in a while, such
cost saving may prove to be penny wise but pound foolish, and this is
such a case.  I find that the steps taken by Pacific Cargo to provide
notice of the auction sale of its assets through the Notice of Intent and
the Sale Motion were reasonable, appropriate and adequate under the
Rules, and the evidence submitted by GE Capital at the Hearing is not
clear and convincing enough to overcome the presumption of the mailbox
rule.

B.  Notice on Shortened Time

GE Capital complains that the Notice of Intent set a hearing on
Pacific Cargo's auction sale of its assets on less than the twenty-one
days' notice mandated by Rule 2002(a).  Rule 2002(a) does generally
establish a requirement of twenty-one days' notice to parties in interest

Page 16 - MEMORANDUM OPINION

of certain events and actions.  However, Rule 2002(a)(2) specifically provides for twenty-one days' notice of a proposed sale of estate assets outside the ordinary course of business, "unless the court for cause shown shortens the time . . . ."  Judge Brown approved the auction sale date after a contested hearing at which the UST opposed Pacific Cargo's proposed auction procedures.  In the Auction Order, Judge Brown found that, "[t]he form of notice, attached as Exhibit 2 to this Order, is reasonably calculated to provide sufficient notice to all creditors of the Debtor's bid procedures and auction."  See Docket No. 338, at p.3. Judge Brown further found as follows:

> Upon the oral motion of Debtor's counsel, the Court hereby shortens the notice period required to provide interested parties with notice of a sale pursuant to Bankruptcy Rule 2002(a) from 21 days to nine (9) days (plus three (3) days mailing).  As such, providing notice no later than July 11, 2013 will be considered good and sufficient notice for informing all parties in interest of the terms of a proposed sale that will act as the floor bid at the Auction and will be considered at the Approval hearing, if no higher bids are made.

See Docket No. 338, at p.4.  As previously noted, the Auction order was not appealed, and it now is final.

I further note, as far as the adequacy of notice to interested parties on shortened time is concerned in this case, Paccar, FMCC and Ally, all of which were secured parties in similar circumstances to GE Capital, had sufficient notice to allow them to participate adequately and effectively at the auction sale, and in fact, Ally and FMCC filed objections in advance of the sale that were resolved.  See Docket Nos. 373, 381, 382, 384, 430 and 431.  In these circumstances, I conclude that GE Capital's argument that holding Pacific Cargo's auction sale on

Page 17 - MEMORANDUM OPINION

1  shortened notice time constituted error justifying vacation of the Hilco
2  Sale Order lacks merit.

3  C.  <u>Lack of Notice to Reed Smith</u>

4         GE Capital argues that notice of the auction sale of its
5  collateral should have been provided to its lead counsel, Reed Smith.
6  Prior to filing the Motion to Vacate, Reed Smith's connection to the
7  Pacific Cargo bankruptcy case was limited.  GE Capital filed a motion for
8  relief from stay on March 27, 2013.  The names of Mr. Muhlheim, who
9  signed the motion, and Nicole Smith of Reed Smith appeared as counsel for
10 GE Capital on the motion.  <u>See</u> Exhibit 5, at pp.5, 9.  On April 16, 2013,
11 Mr. Muhlheim advised Pacific Cargo's counsel Tara Schleicher that Aaron
12 Chapin of Reed Smith was "the appropriate person to contact about Pacific
13 Cargo."  <u>See</u> Exhibit 3, p.1.  Thereafter, Mr. Chapin and Ms. Lutzenhiser
14 negotiated the terms of a stipulated order to resolve GE Capital's motion
15 for relief from stay.  <u>See</u> Exhibit 3.  However, the stipulated order was
16 signed by Mr. Muhlheim only as GE Capital's counsel.  <u>See</u> Exhibit 7, at
17 p.2.  Ms. Lutzenhiser testified that serving attorneys at Reed Smith with
18 documents in the Pacific Cargo case was never discussed.

19        In fact, as previously noted, GE Capital has admitted that Mr.
20 Muhlheim's firm, Luvaas Cobb, was GE Capital's attorney of record in the
21 Pacific Cargo case.  Reed Smith never filed a special notice request in
22 the case, and Reed Smith attorneys Alexander Terras and Aaron Chapin did
23 not file applications for admission pro hac vice until after the Motion
24 to Vacate was filed.  <u>See</u> Docket Nos. 466 and 481.

25        LR 83-3(a)(1), applicable in the bankruptcy court for the
26 District of Oregon under LBR 9010-1(a)(2)(C), provides that out-of-

Page 18 - MEMORANDUM OPINION

district counsel may be admitted pro hac vice if they associate local counsel "who will meaningfully participate in the preparation and trial of the case." In a recent article in "For the District of Oregon," the quarterly publication of the Oregon Chapter of the Federal Bar Association, Magistrate Judge John V. Acosta and Richard Vangelisti discuss "The Integral Role of Local Counsel in the District of Oregon."

> Local counsel's presence and participation have not been rendered obsolete by liberal rules for granting pro hac vice admissions, the increase in cross-border practice, or the availability of electronic filing. Strong participation of effective local counsel better serves the client and ensures that cases are handled in conformity with local rules and custom and with the level of professionalism expected of lawyers practicing in the District of Oregon. . . . If there is some doubt . . . on whether local counsel should participate in some aspect of the case or court proceeding, counsel should err on the side of participation. Out-of-district counsel should inform the client that the District of Oregon requires local counsel to "meaningfully participate."

For the District of Oregon, Vol. XVII, No. 2, at p.1 (Summer 2013). LBR 9010-1(a)(2)(C) further provides that, "An attorney admitted pro hac vice will not be considered an attorney of record."

Implicit in GE Capital's argument is the assumption that if only the Notice of Intent and Sale Motion had been served on Mr. Chapin of Reed Smith, he would have recognized their significance immediately, and GE Capital's interests with respect to the auction sale of its collateral could have been protected. Of course, the same analysis applies if Mr. Muhlheim had only been authorized to review the ECF notices sent to him and his firm by Pacific Cargo. As a bottom line matter, Pacific Cargo served the Notice of Intent and Sale Motion consistent with the requirements of the Rules. In addition, they were

Page 19 - MEMORANDUM OPINION

served both by mail and electronically on GE Capital's counsel of record under the LBR's. I find that the notices of the auction sale of GE Capital's collateral by Pacific Cargo were adequate and legally sufficient. I further conclude that GE Capital's due process rights were not violated by the manner and timing with which the auction sale of GE Capital's collateral by Pacific Cargo were noticed. Accordingly, I reject GE Capital's arguments in support of the Motion to Vacate based on its allegations of lack of and/or inadequate notice, and the sale of GE Trucks to Hilco is not void.

3.   Inadequate Value/Lack of Good Faith

The Ninth Circuit has emphasized the need for finality in considering bankruptcy sales. See, e.g., Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.), 846 F.2d 1170, 1172 (9th Cir. 1988). GE Capital challenges the sale of its collateral to Hilco, arguing that Hilco cannot be characterized as a "good faith" purchaser, and the purchase price was inadequate, resulting in a windfall to Hilco. I consider each of these arguments.

A.   Good Faith Purchaser

"Typically, lack of good faith is shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" Ewell v. Diebert (In re Ewell), 958 F.2d 276, 281 (9th Cir. 1992), quoting from Community Thrift & Loan v. Suchy (In re Suchy), 786 F.2d 900, 902 (9th Cir. 1985). Ian Fredericks, an attorney with Hilco's legal department, testified that Hilco became aware of the Pacific Cargo auction sale opportunities based on a direct contact from Equity Partners. After performing due

Page 20 - MEMORANDUM OPINION

diligence, Hilco determined to participate in the auction sale to pursue the acquisition of all of Pacific Cargo's rolling stock for a maximum total purchase price of $1.1 million. Hilco subsequently participated in the auction, consistent with the required bidding procedures, but was outbid by the credit bids of Paccar, FMCC and Ally for their respective vehicle collateral. Hilco had the winning bid only for the GE Capital collateral. Mr. Fredericks testified that Hilco had no previous connection or affiliation with Pacific Cargo. Jonathan Reich, Hilco's agent at the auction, had a previous connection with Equity Partners, but that prior relationship had no influence or impact on Hilco's participation in the Pacific Cargo auction sale. There is no evidence in the record of any inappropriate conduct, fraud or collusion with other bidders by Hilco, or any evidence of preferential treatment of Hilco, with respect to the Pacific Cargo auction sale. GE Capital admitted as much at the Hearing. Hilco was just looking to make a profitable deal on acquisition of the Pacific Cargo rolling stock. I find that Hilco participated in the Pacific Cargo auction sale in good faith.

B. <u>Adequacy of the Sale Price</u>

There is some authority in the Ninth Circuit that looks to a benchmark "value," e.g., seventy-five percent of appraised value, as a standard for determining whether a buyer in fact was a "good faith purchaser for value." <u>See, e.g.</u>, <u>In re Abbotts Dairies of Pa., Inc.</u>, 788 F.2d 143, 149 (9th Cir. 1986), citing <u>In re Rock Indus. Mach. Corp.</u>, 572 F.2d, 1195, 1197 n.1 (7th Cir. 1978). However, ultimately, the Ninth Circuit has concluded that a "good faith purchaser" determination is not dependent on a sale generating a specific level of value, particularly in

Page 21 - MEMORANDUM OPINION

a public auction context. "An auction _is_ sufficient to establish that the purchaser has paid value so long as the purchaser bought the debtor's property in good faith." <u>In re Onouli-Kona Land Co.</u>, 846 F.2d at 1174 n.1 (emphasis in original), citing <u>In re Abbotts Dairies of Pa., Inc.</u>, 788 F.2d at 149. In other words, the purchase price established through a noncollusive auction sale is adequate evidence of "value" to determine the good faith of the purchaser.

I concede, as I did in colloquy with GE Capital's counsel at the Hearing, that if GE Capital had been present at the Pacific Cargo auction sale, the $180,000 purchase price paid by Hilco for GE Capital's collateral would not have been the winning bid. GE Capital had filed a secured proof of claim, to which no objection had been filed, in the amount of $1,005,289.78, that it could have credit bid up to its full amount, or at least up to the value of the GE Trucks stated in Pacific Cargo's schedules, $910,251.21 (Docket No. 1, Schedule B25). As previously noted, Hilco lost in its bids to acquire other rolling stock of Pacific Cargo to the credit bids of Paccar, FMCC and Ally. However, GE Capital was not there, and in the public auction that proceeded, Hilco submitted the winning bid for the GE Trucks.

Will Hilco make some money on its acquisition of the GE Trucks? Undoubtedly. As noted by GE Capital in its Supplemental Brief at p.6, "Hilco is not an end user of commercial trucks, but is rather in its own right a reseller of assets and a self described 'Organization Dedicated to Asset Valuation, Monetization, and Advisory Services.'" Docket No. 512, at p.6. Hilco was exactly the sort of equipment purchaser that Equity Partners was targeting in its sale promotion efforts to maximize

1     the value to be realized for Pacific Cargo's estate.

2         While I found the testimony of Mr. Dan Pahl, GE Capital's

3     appraiser witness, less persuasive than the testimony of Jody Bacque,

4     Hilco's VP-Asset Sales, as to the values that can be realized from resale

5     of the GE Trucks, Hilco's profits on resale should be substantial.

6     However, I do not find the potential profits from such resales

7     unconscionable or providing Hilco with an inappropriate windfall.  Hilco

8     was an active bidder at the Pacific Cargo auction sale in order to pursue

9     a potentially profitable business opportunity.  It submitted the winning

10     bid to acquire the GE Trucks as a good faith purchaser.  I do not find

11     the amount of Hilco's winning bid so inadequate that it supports setting

12     aside the Hilco Sale Order.

13                    IV.   CONCLUSION

14         Based on the foregoing findings and conclusions, I will deny GE

15     Capital's Motion to Vacate.  Counsel for Hilco should submit a

16     straightforward order, consistent with this Memorandum Opinion, denying

17     the Motion to Vacate within the next ten days.

18                        ###

19 cc:      Margot D. Lutzenhiser, Esq.
             Alexander Terras, Esq.

20              Aaron B. Chapin, Esq.
             Wilson C. Mulheim, Esq.

21              Susan S. Ford, Esq.
             Timothy A. Soloman, Esq.

22              Tara J. Schleicher, Esq.

23

24

25

26

Page 23 - MEMORANDUM OPINION